SCOTT A. RAIBLEY *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF WABASH, Defendant-Appellee.—GUY O. SHEHORN *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF CLAY *et al.*, Defendants-Appellees.—GUY SHEHORN *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF EFFINGHAM, Defendant-Appellee.—GUY SHEHORN *et al.*, Plaintiffs-Appellants, v. THE CITY OF EFFINGHAM, Defendant-Appellee.

Fifth District Nos. 5—85—0128, 5—85—0390, 5—85—0393, 5—85—0408 cons.

Opinion filed April 8, 1987.

John F. Bramfeld, of Phebus, Tummelson, Bryan & Knox, of Urbana, for appellants.

Stephen G. Sawyer, State's Attorney, of Mt. Carmel, for appellee County of Wabash.

Sherri L. E. Tungate, State's Attorney, of Louisville, for appellee County of Clay.

John E. Longwell, Assistant State's Attorney, of Effingham, for appellee County of Effingham.

James F. Jarrett, of Schniederjon, Weber, Harvey & Stephens, of Effingham, for appellee City of Effingham.

Richard L. Kline, of Woodcock, Kline & Kaid, P.C., of Mt. Carmel, and Joseph A. Yocum, of Evansville, Indiana, for appellee Neale W. Shaw.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiffs, Scott Raibley, James Hart, Guy Shehorn, Harvey Shock, John Shrum, Frank Koester, and Mike Carr, have perfected and consolidated the instant appeals from judgments entered on administrative review by the circuit courts of Wabash, Clay, and Effingham counties in favor of defendants, County of Wabash, County of Clay, County of Effingham, and City of Effingham. The proceedings were instituted in the various trial courts, seeking administrative review of decisions of local governing bodies regarding determination of the prevailing wage for highway maintenance workers. (Ill. Rev. Stat. 1985, ch. 48, par. 39s—1 *et seq.*) In a related matter Neale Shaw, vice-president of Mt. Carmel Sand & Gravel Company, Inc., contests on appeal the ruling of the circuit court of Clay County that he had no standing to challenge the county's prevailing wage ordinance.

Prior to January 1, 1984, maintenance work on existing public works was specifically excepted from the prevailing wage law (Ill. Rev. Stat. 1981, ch. 48, par. 39s—2); however, effective January 1, 1984, this specific exception was eliminated (Ill. Rev. Stat. 1983, ch. 48, par. 39s—2 (as amended by Pub. Act 83—443, sec. 1, eff. January 1, 1984)). Thus, maintenance workers on public works are now to be paid "[n]ot less than the general prevailing rate of hourly wages for work of a similar character on public works in the locality in which the work is performed, and not less than the general prevailing rate of hourly wages for legal holiday and overtime work." (Ill. Rev. Stat. 1985, ch. 48, par. 39s—3.) The general prevailing wage also includes fringe benefits for health and welfare insurance, vacations and pensions paid generally in the locality. Ill. Rev. Stat. 1985, ch. 48, par. 39s—2.

In each of the instant cases the local governing body determined

that maintenance work was separate and distinct from higher-paid construction work. Therefore, a lower rate of pay ostensibly based upon previous employment practices was instituted for maintenance work as compared to construction work. Plaintiffs challenged this interpretation, alleging that (1) in eliminating the exemption relating to maintenance workers, the legislature intended that all workers employed on public works projects be paid in accordance with their craft or type of work and not with reference to the type of contract being performed, and (2) the local governing bodies based their wage determination for maintenance workers on inadequate information. In each case the circuit court ruled in favor of the local governing body's interpretation of the statute. Plaintiffs appeal, raising the same issues they argued in the circuit court.

■ *Frye v. County of Iroquois* (1986), 140 Ill. App. 3d 749, 489 N.E.2d 406, is dispositive of plaintiffs' first issue. In *Frye*, maintenance workers raised an identical issue. The court found that "even though maintenance is no longer excluded from the process [of determining prevailing wages], neither is it mandated that the prevailing wage for a tradesman performing maintenance is equivalent to that of a brother engaged in construction." (140 Ill. App. 3d 749, 751, 489 N.E.2d 406, 408.) We therefore reject plaintiffs' assertion that the statute entitles maintenance workers to be paid construction workers' wages.

■ The second issue raised by plaintiffs is whether the prevailing wage determinations made by each local governing body were supported by adequate information. This determination is necessarily a question of fact. A court on review of an administrative decision will not disturb such findings of fact unless they are contrary to the manifest weight of the evidence. *Lakin v. Gorris* (1983), 113 Ill. App. 3d 1034, 1037, 448 N.E.2d 215, 217; see also *Frye v. County of Iroquois* (1986), 140 Ill. App. 3d 749, 751, 489 N.E.2d 406, 408.

CASE No. 5—85—0128
■ The Wabash County board enacted the following relevant prevailing wages:

| Construction | Hourly Wages | Hourly Fringe Benefits | |
| | | Welfare | Pension |
| --- | --- | --- | --- |
| Laborers | $13.75-$13.85 | $1.035 | $ .30 |
| Operating Engineers | $ 9.50-$17.45 | $1.00 | $1.50 |
| Truck Drivers | $14.275-$15.125 | $1.90 | $1.375 |

| Maintenance | Hourly Wages | Welfare | Pension |
|---|---|---|---|
| Laborers | $ 7.78 | $1.00 | $11/wk |
| Operating Engineers | $ 8.95 | $1.00 | $.40 |
| Truck Drivers | $ 7.78 | $1.00 | $11/wk |

Scott Raibley, James Hart, and Guy Shehorn filed a written objection to the wage determination for maintenance workers. The following evidence was submitted to the county board during the hearing on this objection.

Gordon Kirkman, the superintendent of highways for Wabash and Edwards counties, testified that he had assisted the county board in investigating the instant prevailing wage rates. In doing so, he requested information from the Illinois Department of Labor, the Teamsters Union, the Operating Engineers Union, and the Laborers Union. In addition, Kirkman requested prevailing wage rates from local contractors for oil and chip maintenance work on county roads. Kirkman related that since the Mt. Carmel Sand & Gravel Company for the last 10 years had performed all of the oil and chip maintenance work on Wabash and Edwards county roads, the prevailing wage contract this company had in effect with the Teamsters and the Operating Engineers from January 1, 1984, through December 31, 1986, for oil and chip maintenance work "was the basis that we used for making our determination for prevailing wages for oil and chipping." The operating engineer contract provided that operating engineers be paid $8.95 per hour, that the company contribute $1 per hour for up to 40 hours per week for health and welfare benefits, and that the company contribute $.40 per hour for up to 40 hours per week for pension benefits. The Teamsters' contract provided that all departments (*i.e.* semitruck drivers, ready mix and gravel truck drivers, road oil and liquid asphalt drivers, and mechanics) be paid $8.28 per hour, that the company contribute $33.75 per week for each week worked for health and welfare benefits, and that the company contribute $11 per week for pension benefits.

Neale Shaw, vice-president of the Mt. Carmel Sand & Gravel Company, and an officer of its subsidiary, Wabash Asphalt, testified that his company probably performed 90% of the oil and chipping road maintenance work within a 40-mile radius of Mt. Carmel, exclusive of the State of Indiana. Mr. Shaw testified that in the last year, on all jobs, the Teamsters and Operating Engineers had performed 289 hours of work for his company. In Mr. Shaw's opinion, the prevailing wage rates enacted by the county board for maintenance workers were generous.

Guy Shehorn, business representative for Operating Engineers

Local 841, testified concerning the number of hours of work performed on public works and the wages paid to his union members in the locality. According to Mr. Shehorn, operating engineers had worked a total of 4,616 hours in Wabash County in the last year. However, none of these hours involved oil and chip maintenance work. Furthermore, Mr. Shehorn indicated that since January 1, 1984, operating engineers·on public works projects were paid $17.15 per hour plus $1-per-hour health and welfare, $1.50-per-hour pension, and $.10 per hour for apprenticeship and training. Although Mr. Shehorn did not feel fully qualified to render an opinion, he believed that the agreement his union had with Mt. Carmel Sand & Gravel Company and Wabash Asphalt was in the nature of a permanent plant agreement rather than an agreement with seasonal employees.

James Hart, business agent for Laborers Local 771, gave testimony relating to the number of hours of work performed on public works and the wages paid to Laborers Union members in the locality. Mr. Hart stated that laborers had worked 10,107 hours in Wabash County in the last year. While Mr. Hart was not aware whether any of these hours involved oil and chip maintenance work, he stated that his union employees did perform oil and chip maintenance work in Clay County for an unnamed contractor. Mr. Hart stated that laborers were paid $13.75 to $13.85 per hour, $1.035 per hour for health and welfare, and $.30 per hour for pension. Although in his testimony Neale Shaw never referred to a contract between his company, or its subsidiary, and the Laborers Union, Mr. Hart claimed that Shaw's company and its subsidiary had a contract with the Laborers Union. This purported contract is between the Laborers Union and two local contractors associations and does not mention Shaw's company or its subsidiary. Hart stated that any laborer performing any work for less than union scale would be investigated.

Edmund Thais, president and district executive officer of Teamsters Local 144, testified that members of his union performed approximately 9,153 hours of work on public works projects in Wabash County. Of these hours, approximately 8,748 were performed for Wabash Asphalt. Union members were paid between $13.975 per hour and $14.825 per hour on these jobs. Fringe benefits included $1.75 per hour for health and welfare and $55 per week for pension. Thais testified that although his union had signed an agreement for $8.28 per hour with Mt. Carmel Sand & Gravel Company, this agreement was intended to cover stationary, full-time employees rather than seasonal employees. Thais had no personal knowledge of how many of the hours worked were for oil and chip road maintenance.

Evidence admitted before the Wabash County board indicated that (1) historically a substantial majority of the oil and chip maintenance work on Wabash County roads was performed by Mt. Carmel Sand & Gravel Company or Wabash Asphalt, and (2) the wages paid to operating engineers and truck drivers on these jobs were substantially lower than those paid to the groups on construction projects. Although the wages paid to laborers on oil and chip contracts were not definitively established, it is apparent from the wages paid to those with more skill (operating engineers) or similar skill (truck drivers) that the prevailing wage established by the ordinance for laborers on oil and chip maintenance projects is supported by the evidence. It would be incongruous for the board to establish a relatively higher rate for laborers engaged in maintenance work than that established for employees performing other types of maintenance work. Moreover, the objectors failed to establish the extent to which oil and chip maintenance work was performed at higher rates of pay. We therefore conclude that the prevailing wage findings of the Wabash County board were not contrary to the manifest weight of the evidence. Consequently, the judgment of the circuit court of Wabash County is affirmed.

CASE No. 5—85—0390

The Effingham County board enacted the following relevant prevailing wages:

| Construction | Hourly Wage | Hourly Fringe Benefits | |
| --- | --- | --- | --- |
| | | Welfare | Pension |
| Laborers | $13.75-$13.85 | $1.035 | $ .30 |
| Operating Engineers | $ 9.50-$17.15 | $1.00 | $1.50 |
| Truck Drivers | $14.275-$15.125 | $1.90 | $1.375 |
| Carpenters | $11.69-$16.705 | $.80-$1.470 | $.90-$.970 |

| Maintenance | Hourly Wage | Welfare | Pension |
| --- | --- | --- | --- |
| Laborers | $5.50 | 0 | 0 |
| Operating Engineers | $7.25 | 0 | 0 |
| Truck Drivers | $6.00 | 0 | 0 |
| Carpenters | $7.00 | 0 | 0 |

Guy Shehorn, Frank Koester, and Mike Carr filed a written objection to the wage determination for maintenance workers. The following evidence was submitted to the county board during the hearing on this objection.

Jack Johnson, Effingham County superintendent of highways, testified to the authenticity of an exhibit he prepared from a contractor survey concerning wages and benefits paid to persons performing

highway maintenance work. This exhibit, which purportedly covered 100% of the highway maintenance contracts performed, showed that truck drivers were paid $6 to $7 per hour, laborers were paid $5.50 to $7.25 per hour, and that operating engineers were paid $7.25 per hour. The total number of hours worked on these contracts, 51,643, was exclusively performed upon township roads located in Effingham County. None of the contractors who actually performed work for Effingham County submitted hourly wage figures for operating engineers. The weighted average wage on work performed (*i.e.*, percentage of total hours worked multiplied by the hourly wage) for laborers was $5.97 per hour and for truck drivers $6.27 per hour. The lowest hourly wages which were adopted represented 60% of the hours worked on highway maintenance projects.

County board chairman Ernest Garbe testified that based upon a 1983 survey of area contractors, the prevailing hourly wage for maintenance carpenters was set at $6.58. Mr. Garbe further stated that due to inflation, the prevailing wage survey was repeated in June 1984. After this survey, the prevailing hourly wage for maintenance carpenters was set at $7 per hour. Unlike the road maintenance survey, no evidence regarding the amount of hours or the percentage of work performed by the participating contractors was submitted.

Frank Koester, business agent for Laborers Local 695, testified that members of his union performed 39,909 hours on public works projects in Effingham County during the last year. Mr. Koester stated that since there was very little if any new highway construction in Effingham County during this time, most of the hours worked on road projects were spent on road maintenance. Koester could account for 5,923 hours of road maintenance work on I-70. The base hourly rate of pay for these hours was approximately $13.95 plus $1.035 per hour for health and welfare, $.30 per hour for pension, and $.05 per hour for the trainee fund. Mr. Koester stated that a laborer's work on a maintenance job was no different than it was on a construction job.

Teamsters Union truck driver Mike Carr testified that applying road oil or liquid asphalt from a truck requires a much greater degree of skill than many other truck driving jobs. According to Mr. Carr, this greater degree of skill was reflected in the hourly rate of pay between tandem drivers ($14.375) and oil distribution drivers ($15.125). In addition to these hourly rates, all Teamsters truck drivers on public works projects were paid $1.90 per hour for health and welfare and $55 per week for pension. Mr. Carr did not know the number of hours his union worked on public works contracts in Effingham County during the past year. He stated, however, that the discrepancy between

Illinois Department of Labor's lower rates for oil and chip truck drivers and higher rates to truck drivers on construction jobs was based upon the fact that oil and chip truck drivers were actually performing stockpiling and maintenance work rather than oil distribution.

Larry Butler, business manager for Carpenters Local 347, testified that maintenance carpentry is more difficult to perform than construction carpentry because working around an existing building requires more skill than constructing a new one. Mr. Butler recited a number of public works projects performed in Effingham County during the past year which add up to approximately 3,140 carpenter hours. Of these projects, he specifically stated that 691 hours were for repairs to the county courthouse. At the time of the hearing, union carpenters were paid $16.70 per hour, plus $.80 per hour health and welfare and $.97 per hour pension.

Guy Shehorn, business manager for Operating Engineers Local 841, testified that his union performed approximately 25,491 hours of labor on public works projects in Effingham County at the same wage rates he attested to in the hearing relating to prevailing wages in Wabash County (No. 5—85—0128). Mr. Shehorn stated that the lower rate paid to some operators ($9.50 per hour) was because these operators used smaller equipment than their higher paid counterparts ($17.15 per hour).

On review, the circuit court affirmed the decision allowing lower pay for highway maintenance workers than for workers on highway construction projects. However, the circuit court reversed the lower pay accorded to maintenance carpenters and remanded the cause to the county board. The county does not challenge this determination.

The survey submitted to the Effingham County board by the superintendent of highways apparently covered all highway maintenance work performed in the last year for local government entities in Effingham County. This was approximately 51,643 hours of work, 60% of which was performed at a rate of $5.50 per hour for laborers and $6 per hour for truck drivers. Although it was established that during the last year Laborers Union members performed 5,923 hours of highway maintenance work on I-70 at approximately $13.95 per hour plus fringe benefits, this figure represents a very small fraction of the total number of hours worked on highway maintenance projects. Moreover, even though no wage figures were submitted for operating engineers by contractors actually performing work for local government entities in Effingham County, the prevailing wage rate established for operating engineers is supported by the survey and by its comparison with the pay differentials enacted between laborers,

truck drivers, and operating engineers on construction jobs. We therefore conclude that the prevailing wages established by the Effingham County board for highway maintenance workers were not contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Effingham County is affirmed.

CASE No. 5—85—0393

The Effingham city council enacted a prevailing wage ordinance identical to the one enacted by Effingham County (No. 5—85—0390) except that the city ordinance makes no reference to a "maintenance carpenter" classification. Guy Shehorn, Frank Koester, and Mike Carr filed a written objection to the wage determination for highway maintenance workers. The following evidence was submitted to the city council during the hearing on this objection.

The testimony of Effingham County superintendent of highways, Jack Johnson, and Effingham County board chairman, Ernest Garbe, essentially reflected the testimony they gave at the hearing before the Effingham County board (No. 5—85—0390). The exhibits which the county board considered in arriving at its wage determination were apparently before the city council.

Dale Kirkspatrick, a consulting engineer to the city of Effingham, testified that the level of skill for all three highway maintenance classifications was lower than that required of the same classifications on a highway construction project.

Laborers Local 695 business agent Frank Koester disagreed with Mr. Kirkspatrick's statement that a lower level of skill was required for maintenance labor than for construction labor. However, Mr. Koester did admit that while the physical labor between maintenance and construction highway work was no different, construction work requires that a laborer be able to use a ruler while maintenance work does not. Mr. Koester's testimony regarding the rate of pay and the number of hours worked by laborers was essentially the same as his testimony before the Effingham County board (No. 5—85—0390).

For the same reasons expressed before the Effingham County board (No. 5—85—0390), Teamsters Union truck driver Mike Carr disagreed with Mr. Kirkspatrick's statement that a lower level of skill was required for maintenance than for construction truck driving. Mr. Carr's testimony regarding hourly wages and number of hours worked by truck drivers was essentially the same as his testimony before the Effingham County board (No. 5—85—0390).

Operating Engineers Local 841 business manager Guy Shehorn's testimony regarding hourly wages and hours worked by operating en-

gineers was essentially the same as his testimony before the Effingham County board (No. 5—85—0390). Mr. Shehorn stated that maintenance and construction work performed by operators do not differ in any substantive way from each other.

Although no evidence specifically directed to highway maintenance work performed in the city of Effingham was admitted, such lack of evidence was not disputed by the objectors. Since the Effingham County survey purportedly covered 100% of the local government entities in Effingham County for whom highway maintenance work was performed in the last year, and since such survey included over 50,000 highway maintenance work hours, we conclude that the city's use of this survey in reaching its prevailing wage determination was not contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Effingham County in case No. 5—85—0393 is affirmed.

CASE NO. 5—85—0408

The Clay County board enacted the following relevant prevailing wages:

| Construction | Hourly Wages | Hourly Fringe Benefits | |
| --- | --- | --- | --- |
| | | Welfare | Pension |
| Laborers | $13.75-$13.85 | $1.035 | $ .30 |
| Operating Engineers | $ 9.50-$17.15 | $1.00 | $1.50 |
| Truck Drivers | $14.675-$15.125 | $1.90 | $1.375 |
| Maintenance | Hourly Wages | Welfare | Pension |
| Laborers | $7.78 | $ .844 | $.275 |
| Operating Engineers | $8.95 | $1.00 | $.40 |
| Truck Drivers | $7.78 | $ .844 | $.275 |

Guy Shehorn, Harvey Stock, and John Shrum filed a written objection to the wage determination for maintenance workers. The following evidence was submitted to the county board during the hearing on this objection.

Clay County superintendent of highways, Gary Wenthe, testified that he prepared an exhibit from a contractor survey concerning wages and benefits paid to persons performing highway maintenance work in Clay County during the last year. This exhibit, which purportedly covered 100% of the highway maintenance contracts performed, indicated that truck drivers were paid $4.75 to $8.44 per hour, that laborers were paid $4.75 to $8.44 per hour, and that operators were paid $4.75 to $8.95 per hour. Fifty-four percent of the funds spent on this work was paid to Mt. Carmel Sand & Gravel Company, whose

hourly pay and benefits rates were apparently adopted by the county board (see evidence presented before the Wabash County board in case No. 5—85—0128). None of the other contractors in this exhibit listed fringe benefits rates.

Several exhibits were submitted by the objectors. These exhibits contain essentially the same information the objectors previously presented in the consolidated cases regarding hourly wages and benefits paid in the locality to laborers, operating engineers, and truck drivers. These exhibits also indicate the following number of hours worked in Clay County by each group of workers at the above rates on public works projects during the last year: laborers, 8,303; operating engineers, 1,724; teamsters, in excess of 1,000. No effort was made to specify which, if any, of these hours were rendered in the performance of highway maintenance work.

Evidence submitted before the Clay County board consisted of a survey which purportedly covered 100% of the highway maintenance work. This survey showed that the rates paid to laborers, operating engineers, and truck drivers were substantially lower on maintenance jobs than on construction jobs. Moreover, the county board adopted the hourly wage and benefits rates paid to truck drivers, operating engineers, and laborers by the contractor who received 54% of the funds spent on such projects. Although this contractor, Mt. Carmel Sand & Gravel Company, gave no wage rate for laborers in the Wabash County case (No. 5—85—0128), it is apparent from the wages paid to those with more skill (operating engineers) or similar skill (truck drivers) that the prevailing wage established by the ordinance for laborers is supported by the evidence. Since the objectors failed to refute this evidence in any meaningful way, we must conclude that the prevailing wage findings of the Clay County board were not contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Clay County is affirmed as to the prevailing wage determination.

In a related matter, the circuit court of Clay County ruled that Neale Shaw, vice-president of Mt. Carmel Sand & Gravel Company, Inc., had no standing to challenge the prevailing wage determination of the county board. In doing so, the circuit court relied upon the rationale of *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 359 N.E.2d 1137. Mr. Shaw alleges that *Lynch* is distinguishable because he is challenging prevailing wage rates before rather than after they are established.

In *Lynch*, a contractor sought to enjoin the letting of highway construction contracts without requiring payment of prevailing wages

by the contractors who were to perform the work. The *Lynch* court concluded that the contractor had no standing to enforce the prevailing wage statute on the ground that he was competitively injured. The court further stated that "[t]he legislature clearly has imposed no duty under the [prevailing wage] statute toward contractors which the County could be said to have breached by its action. The plaintiff, as a contractor, is thus clearly not one for whose benefit the statute was enacted." 45 Ill. App. 3d 743, 748, 359 N.E.2d 1137, 1141.

The reasoning in *Lynch*, which is applicable to a contractor's action to enforce a prevailing wage ordinance which is already in effect, is inapplicable to the instant facts. In the instant case Neale Shaw, a representative of a local corporate contractor, filed a written objection to the prevailing wage rates enacted by the county board within 15 days after a certified copy of the ordinance was published. This complies with the statutorily mandated procedure for objecting to prevailing wage rates before they become effective. (Ill. Rev. Stat. 1985, ch. 48, par. 39s—9.) Moreover, as it cannot be said that the corporation represented by Mr. Shaw would not be affected by the prevailing wage determination, we therefore conclude that Mr. Shaw is an "affected person" within the scope of the objection procedure. We reverse the trial court's determination that Mr. Shaw had no standing to present evidence at the prevailing wage hearing. However, the cause need not be remanded because the county board did consider Mr. Shaw's evidence in determining the prevailing wage rate.

For the foregoing reasons: (1) the judgment of the circuit court of Wabash County in case No. 5—85—0128 is affirmed; (2) the judgment of the circuit court of Effingham County in case No. 5—85—0390 is affirmed; (3) the judgment of the circuit court of Effingham County in case No. 5—85—0393 is affirmed; and (4) the judgment of the circuit court of Clay County in case No. 5—85—0408 is affirmed as to the prevailing wage determination but reversed as to the standing question.

No. 5—85—0128—Affirmed.
No. 5—85—0390—Affirmed.
No. 5—85—0393—Affirmed.
No. 5—85—0408—Affirmed in part; reversed in part.

KARNS, P.J., and JONES, J., concur.